# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DENISE C. SOON,

       Plaintiff,

v.                                            No. CIV-O4-0676 BB/DJS

PNM RESOURCES, INC. EMPLOYEES'
RETIREMENT PLAN, and PNM
RESOURCES, INC., administrator of said Plan,

       Defendants.

## MEMORANDUM OPINION AND ORDER

    This case, under the Employee Retirement Income Security Act of 1974 ("ERISA", 29 U.S.C. § 1001, et seq. (as amended)), comes before the Court for consideration of Defendants' motion for summary judgment on Counts I-IV, ("Dfdts. Motion," (Doc. 11, 12)), and Plaintiff's cross-motion for summary judgment on Count I, ("Pltfs. Motion," (Doc. 15, 16)).  The Court has reviewed the submissions of the parties and the relevant law, and for the reasons set forth below, finds that Defendants' motion should be GRANTED with respect to Count I and DENIED with respect to Counts II-IV.  Plaintiff's cross-motion on Count I should be DENIED.

## I. BACKGROUND

    The dispute in this case is whether Denise Soon, widow of a former participant in Defendants' pension plan (the "Plan"), is entitled to a larger monthly annuity.  Two spousal annuities are at issue: a joint and survivor (QJSA) and a pre-retirement survivor annuity (QPSA).  A QJSA is an annuity that the participant begins to receive while still alive. 29 U.S.C. § 1055(a).

Defendants' Plan provides three QJSA options: 50%, 66-2/3% and 100%.[1]  (Dfdts. Statement of

Facts [SOF] Ex. 1 at PNM000072-77.) In contrast, a QPSA is an annuity that a surviving spouse

receives when a participant dies before payments begin.  29 U.S.C. § 1055(b).  Generally,

Defendants' Plan permits only one QPSA, a 50% annuity.  (Dfdts. SOF Ex. 1 at PNM 000058.)

However, the Plan pays a correspondingly enhanced QPSA if a participant elected an enhanced

QJSA but died in the narrow window before payments began. (Id. at  PNM 000077.)

        Ms. Soon's husband, Henry Soon, was employed by PNM from January 10, 1977 to

August 1, 2000.  (Dfdts. SOF Ex. 2 at PNM 000006.)  In 1998, at age 51, he became terminally

ill.  (Id. at PNM 000021.) In 1999, he stopped working and began receiving disability payments,

but deferred his pension.  (Id. at PNM 000025.)  He signed an estimate of benefits, indicating that

he wanted the "Full" (i.e., 100%) annuity which would yield the highest monthly annuity to Ms.

Soon. (Id. at PNM 000028.) It is undisputed that, at least through June 1, 2002, Mr. Soon

continued to intend that his wife receive the 100% annuity. (Answer ¶ 29.) However, Defendants'

Plan requires that such elections be made within a narrow "election period," no more than ninety

and no less than thirty days before the annuity starting date.  (Complaint and Answer at ¶ 29;

Dfdts. SOF Ex. 1, at PNM000074.)

        Due to the narrow window, participants have two choices if they do not need income and

wish to maximize the benefits to be received by a surviving spouse.  First, participants like Mr.

Soon can elect a 100% QJSA annuity and begin receiving income; this establishes the amount of

---

[1]The percentage signifies how much of the monthly payment the spouse will receive after the death of the
participant, e.g., a 50% QJSA that pays $1000 per month while the participant is alive, would pay $500 per month
to the surviving spouse after the participant dies. There are also other choices available to participants which are
not relevant here.

the income the spouse will receive upon death of the participant.  The disadvantage to this approach is that participants forfeit the amount that their payments would have grown due to deferral.[2]

Second, a participant can submit repeated forms, electing a 100% annuity to begin in ninety days followed by a new form before ninety days have elapsed, revoking the last election and choosing a starting date ninety days further away.[3] (See Defendants' Reply at 6-7.) When a participant dies, this strategy produces an effective election of a 100% annuity, made during the narrow window, at the highest possible rate.  If a participant does not take one of these two measures, Defendants' Plan will only pay the surviving spouse a standard 50% annuity.

Defendants admit that Mr. Soon attempted to use the second strategy, repeatedly electing to commence benefits but then revoking that election by submitting a new election form before benefits actually commenced.  (Dfdts. SOF Ex. 2 at PNM 000033.)  Defendants also admit that Mr. Soon told the benefits department that he planned to submit a new form every ninety days. (Complaint and Answer ¶ 29.)  However, the last form he submitted was dated June 1, 2002; that form was entirely blank other than his signature and the date. (Dfdts. SOF Ex. 2 at PNM 000001-000003.) Defendants did not reject that form or return it to Mr. Soon for completion.  Defendants admit that this blank signed form would have been effective to elect a 100% annuity if Mr. Soon had died within ninety days of its date.  (Complaint and Answer at ¶¶ 29.)  Mr. Soon never

---

[2]To illustrate, here the projected monthly amount increased from $1272.78 to $1474.34 over 39 months as a result of deferral. (Compare Henry Soon Retirement Calculations, Dfdts. SOF Ex. 2 at PNM 000028 dated Feb. 19, 1999, with PNM 000018 dated May 30, 2002.)

[3]The Plan permits an unlimited number of such elections followed by revocations.  (Dfdts. SOF Ex. 1 at PNM00074.)

revoked this "election" but Defendants never started making payments to Mr. Soon and he never complained.  Defendants now interpret the blank form submitted June 1, 2002 as Mr. Soon's election to defer his annuity starting date.[4]  (Dfdts. SOF Ex. 2 at PNM 000033.)

Mr. Soon died September 23, 2003. (Dfdts. SOF Ex.2, at PNM000009.) When Denise Soon applied for her survivor annuity, she received $816.03 monthly, corresponding to a 50% annuity, rather than $1511.55. (Id. at PNM 000012.)

Defendants' Plan provides for an administrative appeal and vests the Benefits Governance Committee with discretionary authority to determine entitlement to benefits and review denials of claims. (Id. at PNM 000085-88.)  Denise Soon filed an appeal with two claims: first, that the narrow window within which the Plan permits elections among the three joint annuities violates an ERISA regulation, and, second, that the administrator failed to provide the required notice and claim forms. The Committee denied the appeal and Ms. Soon brought this action.

## II. STANDARD OF REVIEW

This Court's jurisdiction arises under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f). Summary judgment is appropriate if there is no genuine issue about any material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). It is the burden of the party moving for summary judgment to show there is no genuine issue of material fact to justify summary judgment. Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2002). In response, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

---

[4]That is one of the choices on the form that Mr. Soon could have checked off but did not.  (See Dfdts. SOF Ex. 2 at PNM000001.)

587-88 (1986).  Summary judgment should not be granted if there has not been adequate time for discovery.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Depending on the facts, varying standards of review may apply under ERISA.  Where, as here, the Plan gives the fiduciary discretion, (Dfdts. SOF Ex. 1 at PNM 000085), decisions on benefits claims under 29 U.S.C. § 1132(a)(1) must be upheld unless they are arbitrary and capricious, unsupported by substantial evidence, or erroneous on a question of law.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 443 (10th Cir. 1996). Such review is limited to the administrative record, Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002), and plaintiffs must exhaust administrative remedies. Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 3801-81 (10th Cir. 1992). However, purely legal determinations are not discretionary and are reviewed de novo. Penn v. Howe-Baker Engineers, Inc., 898 F.2d 1096, 1099-1101 (5th Cir. 1990); and see, Foutz v. U.S., 72 F.3d 802, 804 (10th Cir. 1995) (construction of federal statutes is question of law).

Claims alleging breach of fiduciary duty brought under 29 U.S.C. § 1132(a)(3)  may be entitled to a de novo standard of review. Moench v. Robertson, 62 F.3d 553, 566-68 (3d Cir. 1995); Lefler v. United HealthCare of Utah, Inc., 162 F.Supp.2d 1310, 1319 (D. Utah, 2001) aff'd, 72 Fed. Appx. 818 (10th Cir. 2003) (unpublished decision).  However, a plaintiff may not merely recast her benefits claims as breaches of fiduciary duty to avoid deferential review.  Id. at 1324 n. 22.  If the allegations depend on interpretation of plan language, the arbitrary and capricious standard will still apply.  Admin. Comm. of the Wal-Mart Assoc. Health & Welfare

5

Plan v. Willard, 393 F.3d 1119, 1123 (10th Cir. 2004).  Whether Plaintiff raises true breach of

fiduciary duty claims or is attempting to avoid deferential review will be analyzed further below.

## III. DISCUSSION

Count 1--Does the Narrow Ninety Day Election Period Violate An ERISA Regulation?

Count 1 is a denial of benefits claim, brought under 29 U.S.C. § 1132(a)(1)(B), alleging

that Defendants' Plan violates ERISA by requiring participants to choose among joint and

survivor annuities during a narrow ninety day window. Both Defendants and Plaintiff have moved

for summary judgment; the facts are undisputed.  This is a pure question of law and is subject to

de novo review.  Penn, 898 F.2d at 1099-1101.

The dispute focuses on one of ERISA's implementing regulations:[5]

> Q-16: Can a plan provide a benefit form more valuable than the QJSA and
> if a plan offers more than one annuity option satisfying the requirements of a
> QJSA, is spousal consent required when the participant chooses among the various
> forms?
> A-16: ...In the case of a married participant, the QJSA must be at least as
> valuable as any other optional form of benefit payable under the plan at the same
> time. Thus, if a plan has two joint and survivor annuities that would satisfy the
> requirements for a QJSA, but one has a greater actuarial value than the other, the
> more valuable joint and survivor annuity is the QJSA. ... A plan, however, may
> allow a participant to elect out of such a QJSA, without spousal consent, in favor
> of another actuarially equivalent joint and survivor annuity that satisfies the QJSA
> conditions. **Such an election is not subject to the requirement that it be made
> within the 90-day period before the annuity starting date.**...

26 C.F.R. § 1.401(a)-20, Q&A 16 [emphasis added].

Plaintiff argues that the highlighted language bars Defendants' narrow ninety day election

period. Defendants counter that it permits longer election periods but does not require them.

---

[5]Although these regulations are in a Question and Answer format, they have been applied as typical regulations.
See Boggs v. Boggs, 520 U.S. 833, 851-52 (1997).

The interpretation of this language is apparently a question of first impression. The Plaintiff has pointed to only one case that has applied this regulation and this Court has found no others.  Young v. Yale Univ. Retirement Plan for Staff Employees, 1997 U.S. Dist. LEXIS 12704 (D. Conn.). But Young is not helpful here because that plan already permitted a longer election period whose lawfulness was not contested. Id. at *4.

Consequently, the Court turned to ERISA's language for interpretive context. See, Jewett v. C.I.R., 455 U.S. 305, 309 (1982). ERISA requires plans to offer annuities for surviving spouses. 29 U.S.C. § 1055(a), (c),  (d), (e);  Boggs v. Boggs, 520 U.S. 833, 843 (1997). The minimum annuity required is 50% of the amount that would have been paid to the joint husband and wife.  29 U.S.C. § 1066(d).   To waive this annuity, a spouse must waive it within ninety days of the annuity starting date. 29 U.S.C. § 1055(c)(1)(A), (2)(A), (7)(A); Hagwood v. Newton, 282 F.3d 285, 290 (4th Cir. 2002). That said, generally ERISA does not mandate what kind of benefits employers must have if they choose to offer an ERISA plan. Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). ERISA merely seeks to assure that employees will not be left empty handed once an employer has promised benefits.  Id.

With this context in mind, the Court examined the disputed regulation.  It addresses whether multiple types of joint annuities are permitted where all of them meet ERISA's minimum spousal protection requirements; and, if they are permitted, what requirements apply to a choice among those annuities. The regulation does not address waiver of a joint annuity; thus, the regulation does not implicate ERISA's spousal protection provisions.

The disputed language provides that the election among available joint annuities is "not subject to the requirement" that it be within the ninety day window for waiving a spousal annuity. The plain language of this regulation is not mandatory; it provides that plans are not required to impose the ninety day waiver window to selection <u>among</u> joint annuities. Because ERISA does not generally mandate plan terms, <u>Lockheed</u>, 517 U.S. at 887, the Court concludes that the plain language means what it says: a longer period is permitted but not required.  Defendants' Plan does not violate ERISA by imposing a short election period.  Defendants' motion for summary judgment on Count I is granted; Plaintiff's corresponding cross-motion is denied.

<u>Counts II, III and IV--Threshold Issues</u>

Plaintiff brings the remaining counts alleging breaches of fiduciary duties.  29 U.S.C. § 1132(a)(3).  That section provides "appropriate equitable relief" to redress acts or practices which violate ERISA.  <u>Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund</u>, 791 F.2d 548, 560 (7th Cir. 1986).  There are two threshold issues. Defendants argue that these are really claims for benefits entitled to deferential review. Second, Plaintiff opposes summary judgment because discovery is incomplete; Defendants resist discovery.

*Characterizing Counts II, III and IV*

Case law analyzing whether relief is available under § 1132(a)(3) has been referred to as a "gordian knot."<u>Alves v. Harvard Pilgrim Health Care Inc.</u>, 204 F.Supp.2d 198, 207 (D. Mass. 2002). In this Court's view, a fair assessment. The critical concern is whether relief for the alleged violations is provided elsewhere in ERISA.  If so, then additional relief is not available under § 1132(a)(3).  <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996).

To illustrate, courts have recharacterized fiduciary duty claims under § 1132(a)(3) as denials of benefits under § 1132(a)(1), if the claim depends on interpretation of plan language. See, e.g., Tolson v. Avondale Industries, Inc., 141 F.3d 604, 610 (5th Cir. 1998) ("mental disorder"); Wald v. Southwestern Bell Corp., 83 F.3d 1002, 1004-06 (8th Cir. 1996) ("impregnation or fertilization"); Lefler, 162 F.Supp.2d at 1319, 1324 ("reasonable and customary charges"). In such cases, relief for improper interpretation of plan terms is adequately provided under § 1132(a)(1). Courts review such claims with the deference to which the administrator would otherwise have been entitled.

Some courts have described the rule as denying relief under § 1132(a)(3) if the plaintiff was a member of the plan (and thus eligible to file a claim for benefits) at the time the suit was filed. DiGiovanni v. Guardian Life Ins. Co. of Am., 2002 WL 1477175 at *6 (D. Mass.) (dispute focused on meaning of total disability in plan); Alves v. Harvard Pilgrim Health Care Inc., 204 F.Supp.2d 198, 207 (D. Mass. 2002) (finding that a present member of a plan cannot seek relief under § 1132(a)(3)). However, the Court finds that the cases reaching this conclusion are distinguishable from the present case because they depended on the meaning of plan language; thus, as previously recognized, § 1132(a)(1) provides an adequate remedy.

In contrast, if an administrator's conduct is at issue, rather than interpretation of the plan, and that conduct has deprived the plaintiff of an otherwise viable claim for benefits, courts have not recharacterized the claim. See, e.g., Howe v. Varity Corp., 36 F.3d 746, 756 (8th Cir. 1994), aff'd, 516 U.S. 489 (1996) (intentional misrepresentation inducing plaintiffs to leave plan); Jordan v. Federal Exp. Corp., 116 F.3d 1005, 1017 (3d Cir. 1997) (failure to disclose irrevocability of

retirement election leading plaintiff to provide benefits for soon to be ex-wife); <u>Krohn v. Huron</u> <u>Memorial Hosp.</u>, 173 F.3d 542, 552 (6th Cir. 1999) (failure to process claim form leading to insurance company denying disability application as untimely); <u>Kaszuk</u>, 791 F.2d at 560 (failing to provide details of plan); <u>Larocca v. Borden, Inc.</u>, 276 F.3d 22, 27 (1st Cir. 2002) (improper termination from plan leading to denials of claims for benefits).

Here, Plaintiff alleges that Defendants' conduct led to Ms. Soon being denied a larger annuity. This case is more like <u>Varity</u>, <u>Jordan</u>, <u>Larocca</u> and <u>Krohn</u>, than <u>Wald</u>, <u>Lefler</u>, <u>Tolson</u>, <u>DiGiovanni</u>, or <u>Alves</u>.  Unlike the latter cases, here there is no dispute about plan language that could be resolved via a claim for benefits under § 1132(a)(1).  Rather, like the former cases, there are allegations of failing to process forms (Count II), <u>Krohn</u>, failing to provide information (Count III), <u>Kaszuk</u>, <u>Jordan</u> and <u>Krohn</u>, and misrepresentation (Count IV), <u>Varity</u>.  The alleged breaches happened while Mr. Soon was alive; his death precludes a remedy under § 1132(a)(1); he is no longer a member and Ms. Soon is now unable to get adequate relief for the alleged violations. Thus, Counts II-IV are not merely claims for benefits as Defendants argue. They are entitled to de novo review and, if successful, to "appropriate equitable relief" under § 1132(a)(3).

*Summary Judgment When Discovery Is Incomplete*

Summary judgment may be denied where there has not been adequate time for discovery. <u>Celotex Corp.</u>, 477 U.S. at 322. A party opposing summary judgment may file an affidavit if additional discovery is needed, Fed. R. Civ. P. 56(f); Plaintiff has done so here. (Soon Aff. ¶ 9, Doc. 17; <u>and see</u>, Pltfs. Resp. at 21.)

Discovery may be appropriate for claims of breaches of fiduciary duty under ERISA.

Vallone v. CNA Financial Corp., 375 F.3d 623, 630 (7th Cir. 2004).  In rebutting summary

judgment based on inadequate discovery, a nonmovant must explain how additional time will

permit her to rebut the movant's allegation of no genuine issue of material fact. Meyer v. Dans un

Jardin, S.A., 816 F.2d 533, 537 (10th Cir. 1987). Here, Plaintiff's affidavit explains that she seeks

discovery from Defendants' employees who dealt with Mr. Soon about his retirement to find out

what he was told, what paperwork was sent to him, how his choices were explained, etc.  (Soon

Aff. ¶ 9.)  The necessity of this material to establish whether there is a genuine issue of material

fact to rebut Defendants' allegations will be analyzed further below for each Count.

Count II--Did Defendants breach the fiduciary duties owed to Mr. Soon by failing to
process his last election form?

*Exhaustion of Administrative Remedies*

Defendants object to the consideration of Count II, arguing that Plaintiff failed to exhaust

her administrative remedies. (Dfdts Motion at 9.) The ERISA statute does not mandate

exhaustion; it is a matter of judicial discretion.  McGraw v. Prudential Ins. Co. of America, 137

F.3d 1253, 1263 (10th Cir. 1998).  Its purpose is to gain the expertise of the administrator, Held

v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir. 1990), reduce

unnecessary litigation, Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir.

1999), and permit the development of a complete record for the court to review.  Id. Exhaustion

is not required where it would be futile, McGraw, 137 F.3d at 1263, or where it would serve no

meaningful purpose, Baker v. Comprehensive Solutions, 2005 WL 820260 (D. Utah). Exhaustion

11

is generally not required for a claim of breach of fiduciary duty.  Smith v. Sydnor, 184 F.3d 356,

362 (4th Cir. 1999); Coleman v. Pension Benefit Guar. Corp., 94 F.Supp.2d 18 (D.D.C. 2000).

However, where, as here, a fiduciary duty claim is closely related to a claim for benefits,

exhaustion may be required. Id.

      Although Plaintiff did not raise her Count II allegation in her administrative appeal, it was

implicit because Defendants' response explained why Mr. Soon's blank form was treated as it

was: Defendants interpreted the form as "a revocation of all prior elections and an election to

continue to defer retirement." Thus, in Defendants' view, there was no claim for benefits. (Dfdts.

SOF Ex. 2 at PNM 000033.) Because Defendants have provided their interpretation, the Court

has the benefit of Defendants' expertise, Held, 912 F.2d at 1205, and further exhaustion would

not reduce litigation, Whitehead, 187 F.3d at 1190.  Moreover, Defendants' Benefits Governance

Committee relied solely on the administrative record now before the Court for its determination;

thus, the Court has a complete record to review.  (Doc. 13, Dfdts. Motion for Protective Order

and to Stay Discovery at 2-3); Whitehead, 187 F.3d at 1190. Finally, the record also provides

Defendants' rationale, reasoning that the interpretation was correct because Mr. Soon never

complained that his benefits had not started.  (Dfdts. SOF Ex. 2 at PNM 000033.) Under these

circumstances, it would have been futile to require Plaintiff to submit an additional appeal merely

to make express an issue that Defendants had already discerned and answered.  McGraw, 137

F.3d at 1263. Further exhaustion would serve no purpose. Baker, 2005 WL 820260.

*Summary Judgment for Count II*

Although the parties disagree about the appropriate standard of review, the Court finds that regardless which standard applies, Plaintiff has shown a genuine issue of material fact with regard to whether Defendants breached their fiduciary duties owed to Mr. Soon.

Second guessing an employee's form and failing to process it is a breach of fiduciary duty. Krohn, 173 F.3d 542, 552 (6th Cir. 1999). Failing to inform a participant of steps to protect eligibility for benefits is also a breach of fiduciary duty, including failing to inform the beneficiary when the fiduciary knows silence might be harmful. Id. at 542. A fiduciary must either process submitted forms or contact the employee if clarification is needed. Id. at 551-52.

Defendants' processing of the June 1, 2002 form raises several questions. Defendants frankly concede that they "interpreted" a blank form as an election to defer benefits. (Dfdts. SOF at PNM 000033.) Even if the Court were to consider this Count under the arbitrary and capricious standard Defendants seek, a blank form cannot provide "substantial evidence" to underpin a fiduciary's decision; by definition, a blank form fails to provide any evidence.

Next, this "interpretation" created a loophole in what appeared to be a fail safe procedure. Sequential submission of forms every ninety days would seem to have little down side. If a claimant forgot to submit a form to revoke and defer income for another ninety days, the logical result should be to begin a 100% annuity earlier than planned. But Defendants' acceptance of

13

blank forms[6] and interpretation contrary to their knowledge of Mr. Soon's intent, (Complaint and Answer ¶ 29; Answer at ¶ 14), appear to have led to Ms. Soon receiving a 50% annuity.

Defendants also adopted mutually exclusive interpretations of Mr. Soon's June 1, 2002 blank election form. On the one hand, Defendants admit that Mr. Soon left his form blank with the "understanding" that his election of a 100% annuity would be applied if he died within ninety days. (Answer at ¶ 29.) To achieve that result, Defendants would have had to construe it as electing to begin payments of a 100% annuity no later than August 31, 2002.[7] Yet when Mr. Soon did not die, Defendants then interpreted the form as Mr. Soon's election to revoke all previous benefit elections and defer retirement. (Dfdts. SOF Ex. 2 at PNM 000033; Complaint/Answer ¶ 29; and, Answer at ¶ 14.) Defendants seek to justify this "interpretation" by saying that it must have been correct because Mr. Soon never objected that his benefits had not started. (Dfdts. SOF Ex. 2 at 11; Dfdts. Reply at 5.) This justification is unavailing.

First, Mr. Soon never received notice of this interpretation. Defendants' failure to inform deprived him of an opportunity to object. See, Horn v. Cendant Operations, Inc., 69 Fed. Appx. 421, 428 (10th Cir. 2003) (unpublished decision) (employee not bound by terms without notice); Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1181 (3d Cir. 1996) (absent notice, beneficiary may not have reason to inquire).

---

[6]Plaintiff has submitted evidence that Defendants maintain a practice of accepting blank signed forms for benefit processing and completing them for participants. (Soon Aff. ¶ 10.) Moreover, the fact that Defendants did not reject Mr. Soon's blank form and instead "interpreted" what it might mean generates a reasonable inference that such forms were acceptable to Defendants for benefits purposes.

[7]Ninety days after June 1, 2002.

14

Second, Mr. Soon failure to object is merely a post hoc rationalization. Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1577 (10th Cir. 1994); and see University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839, 849 n. 7 (6th Cir. 2000). When Defendants adopted the new "interpretation," they could not have known whether Mr. Soon would complain. Thus, Mr. Soon's reaction cannot explain Defendants' inconsistent interpretation.

Finally, Defendants assert in their motion that the form was not a valid election of benefits. (Dfdts. Motion at 11.)[8]  If the form was not valid, the time to reject it was when Defendants received it and Mr. Soon could rectify the problem, not two and a half years later after his death. The invalidity of this form would have been a material fact affecting the transaction that Defendants knew but Mr. Soon did not; a fiduciary is obligated to inform a beneficiary of such facts. Restatement Second of Trusts, § 173 comment d (1959).

Here, Defendants should have either processed the form submitted by Mr. Soon as an election for benefits starting August 31, 2002, rejected it as incomplete, or sought clarification from Mr. Soon as to his intentions.  Krohn, 173 F.3d at 550, 52. Even under the deferential review Defendants seek, it would be arbitrary and capricious to adopt mutually exclusive interpretations of blank forms.  Fought v. Unum Life Ins. Co. of Am., 379 F.3d 997, 1004 n. 3 (10th Cir. 2004), petition for cert. applied for on other grounds, 73 U.S.L.W. 3465 (Jan. 24, 2005); and see Reich v. Ladish Co., Inc., 306 F.3d 519, 525 (7th Cir. 2002) (inconsistent interpretations of plan language "clearly unreasonable"). The Court concludes that there is a genuine issue of material fact whether Defendants breached their fiduciary duties in their handling

---

[8]In Defendants' response to Ms. Soon's administrative appeal, Defendants phrased this differently, stating that the blank form had "no effect."  It is not clear why, if the form had no effect, the Defendants interpreted it as they did.

of Mr. Soon's June 1, 2002 form. Defendants' motion for summary judgment on Count II is

denied. Because Plaintiff has established a genuine issue of material fact, it is not necessary to

address the sufficiency of the Rule 56(f) affidavit with regard to Count II.

Counts III and IV--Did Defendants violate ERISA by failing to provide Mr. Soon with the

required explanations of his benefits and misleading him about claim forms?

Additional discovery is needed for these counts, so the Court will analyze them together.

In Count III, Plaintiff alleges that Defendants failed to timely provide the information ERISA and

the Plan require. Providing insufficient information to permit a participant to make an informed

decision can be a breach of fiduciary duty.  Larsen v. NMU Pension Plan Trust of the NMU

Pension and Welfare Plan, 767 F.Supp. 557, 557 (S.D. N.Y. 1991).

ERISA requires that plans provide participants written information within a "reasonable

time" before the annuity starting date. 29 U.S.C. § 1055(c)(3)(A) (including terms and conditions

of joint annuities, right to make certain elections, rights of spouses and revocation rights).  The

Plan requires benefit information to be provided at least thirty days and not more than ninety days

before the annuity starting date. (Dfdts. SOF Ex. 1 at PNM 000073.)

Defendants claim that Mr. Soon was provided with this information at the time he retired.

(Dfdts. SOF #26.) But none of the documents offered by Defendants show that Mr. Soon

received the required information.  The documents do not explain revocation or mention that the

50% annuity is the default QPSA or the need to submit forms every ninety days.[9] Although

Defendants concede that Mr. Soon submitted repeated elections, there is no evidence that

[9]Although much of this information is in the Plan document itself, there is no evidence that Mr. Soon received a
copy of the Plan or if so when he received it. No summary plan description was provided for the Court to review.

Defendants provided the required information each time, as the Plan would appear to require. Plaintiff complains that Defendants have offered no facts to support this claim, (Resp. at 20), but Plaintiff has been unable to rebut Defendants' contention due to inadequate discovery. (Id. at 21.)

In Count IV, Plaintiff alleges that Defendants had a practice of sending claim forms, perhaps every ninety days, to retired employees who were not receiving benefits; and, that Mr. Soon understood that the Defendants would choose the 100% annuity on each blank form he submitted. (Complaint at ¶ 28.) Plaintiff alleges that Defendants misled Mr. Soon when they changed this practice without notice. (Id. at ¶¶ 28-31.) The precise parameters of this claim are as yet unclear. Defendant denies that it had such a practice and denies that ERISA requires a plan administrator to provide individualized attention to participants. (Dfdts. Motion at 12.)

ERISA claims procedures must be reasonable, 29 C.F.R. § 2560.503-1(b), may not unduly inhibit the processing of claims, id. at (b)(3), and must treat similar individuals consistently, id. at (b)(5). Inadequate claims procedures can justify the remedies Plaintiff seeks under 29 U.S.C. § 1132(a)(3). Arsenault v. Bell, 724 F.Supp. 1064, 1067 (D. Mass. 1989).

Misleading participants can be a breach of fiduciary duty.  Varity Corp., 516 U.S. at 506. ERISA's administrative obligations are more than providing the information required by the statute.[10]  Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 759 (D.C. Cir. 1990).  A

---

[10]The cases cited by Defendants are distinguishable.  Manning addresses the duties of a plan administrator under the Consolidated Omnibus Budget Reconciliation Act (COBRA), not the fiduciary duties required by ERISA. Compare Varity Corp. v. Howe, 516 U.S. 489, 497 (1996) (explaining that fiduciary duties required by ERISA go beyond those enumerated in statute) with Manning v. W.I. McKendree Co., Inc., 1991 U.S. Dist. LEXIS 12894 (E.D. Va.) and 29 U.S.C. § 1166 (listing plan administrator duties required by COBRA).  Allen does not apply where plaintiff has alleged misrepresentation.  In re Unisys Corp. Retiree Medical Benefit ERISA Litigation, 57 F.3d 1255, 1264 (3d. Cir. 1995); Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 85-51 (E.D. Pa. 1979), aff'd mem., 633 F.2d 209 (3d. Cir. 1980).  Andre was a denial of benefits claim, not an interpretation of the duties of an ERISA fiduciary.  Andre v. Salem Technical Services, 797 F.Supp. 1416 (N.D. Ill. 1992).

17

fiduciary may not mislead and this may require individualized attention.  Id.; Howe v. Varity

Corp., 36 F.3d 746, 756 (8th Cir 1994), aff'd, 516 U.S. 489 (1996) (duty to advise  beneficiary of

circumstances that threaten relevant interests). This duty to inform applies even if the beneficiary

did not specifically inquire.  Krohn, 173 F.3d at 547; Bixler v. Central Pennsylvania Teamsters

Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (failure to advise of health insurance

when asked about life insurance could constitute breach if employer was aware of illness). Thus, if

Defendants' claim procedures misled Mr. Soon, Plaintiff could prevail on this claim.

Plaintiff has not established that there remain genuine issues of material fact for either

Count III or Count IV due to the lack of discovery. Plaintiff's Rule 56(f) affidavit explains how

additional discovery will permit her to resist summary judgment, Meyer, 816 F.2d at 537, by

revealing who dealt with Mr. Soon about his retirement, what he was told, what paperwork was

sent to him, how his choices were explained, etc. (Soon Aff. ¶ 9). This discovery would be

directly relevant.  The Court will deny Defendants' summary judgment on Counts III and IV due

to an inadequate opportunity for discovery.  Celotex, 477 U.S. at 322.

## IV. CONCLUSION

Defendants' motion for summary judgment on Count I is granted because the disputed

regulation does not require Defendants' Plan to give participants a longer period in which to make

their benefit elections; Plaintiff's corresponding cross-motion is denied. Defendants' motion for

summary judgment on Count II is denied because there are genuine issues of material fact whether

Defendants breached their fiduciary duties to Mr. Soon.  Defendants' motion for summary

judgment on Counts III and IV is denied to give Plaintiff adequate time for discovery.

18

## V. ORDER

Defendants' motion for summary judgment on Count I is GRANTED; Plaintiff's

corresponding cross-motion is DENIED. Defendants' motion for summary judgment on Counts

II, III and IV is DENIED.

**DATED** at Albuquerque, this 27th day of May, 2005.


BRUCE D. BLACK
United States District Judge


Attorneys:

For Plaintiff:
    Earl Mettler, Esq.
    Mettler & LeCuyer, P.C.
    4308 Carlisle NE, Suite 210
    Albuquerque, NM  87107

For Defendants:
    Robert C. Conklin, Esq.
    Jacqueline M. Woodcock, Esq.
    201 Third St. NW, Suite 1200
    P.O. Box AA
    Albuquerque, NM  87103

    Paul J. Giancola, Esq.
    Anne Meyer, Esq.
    SNELL & WILMER, L.L.P.
    One Arizona Center
    400 E. Van Buren
    Phoenix, AZ  85004-2202

19